**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KRISTY WAGNER,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>AKIN GUMP STRAUSS HAUER & FELD, LLP,<br><br>　　　　　　　Defendant. | Civil Action No. 1:16-cv-00568-EGS<br><br>**REDACTED** |

**DECLARATION OF ROBERT G. LIAN, JR. IN SUPPORT OF
DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

I, Robert G. Lian, Jr., hereby declare as follows:

1.　　　　I am a partner at Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump" or the "Firm") and represent Defendant in this case.  This declaration is based on my personal knowledge and review of pertinent documents and records.  If called as a witness, I could and would testify competently to the facts stated herein.

2.　　　　I have represented the Firm since Plaintiff Kristy Wagner filed this action.

3.　　　　The instant case was one of four that Ms. Wagner, a former attorney at our Firm, filed against the Firm, one of its partners, and one of our clients in the months following her voluntary resignation from the Firm in late 2014.

4.　　　　Following her departure from the Firm, Ms. Wagner sent dozens of text and email messages to Firm partners complaining about her treatment by the Firm.  Among the various messages were threats of violence against two partners and their children.

5.　　　　In response to Ms. Wagner's threats, the Firm filed lawsuits seeking restraining orders against Ms. Wagner.  In a settlement of the litigations, Ms. Wagner agreed to stay away

from the Firm and its partners and ███████████████████.  Ms. Wagner also agreed to

release and waive all claims that she might have against the Firm and its partners.

6.      Notwithstanding the prior settlement agreement, which was negotiated with Ms.

Wagner through her counsel at the time, Ms. Wagner sued the Firm in the instant case on March

25, 2016, claiming that the Firm engaged in disability discrimination against her by not

accommodating a foot injury.  The Firm moved to dismiss and, in the alternative, for summary

judgment on a number of grounds, including on the basis of the release in the prior settlement

agreement.

7.      Shortly after filing the instant lawsuit, Ms. Wagner again began sending the Firm

and undersigned counsel dozens of email communications.  In some, she requested payment on

her claim or to return to the Firm as a partner.  Several times, she threatened to show up at the

Firm's offices to resume work and, among other things, to have an ice machine delivered for the

treatment of her foot.

8.      Ms. Wagner also contacted Akin Gump clients about her grievances with the

Firm.  She accused two partners of criminal misconduct and tried to prevent one partner from

securing a speaking engagement because of fabricated allegations of criminal behavior.  She also

filed a motion for a default judgment asking the Court to award her over $17 million despite the

fact that the Firm has never been in default in this matter.  At one point, Ms. Wagner began

copying the Securities and Exchange Commission and the U.S. Attorney for the Southern

District of New York on her emails to the Firm.

9.      The Firm moved for and obtained a temporary restraining order against Ms.

Wagner on May 26, 2016, preventing her ongoing harassing conduct toward Akin Gump and its

clients.  Among other things, the order prohibited Ms. Wagner from coming within 200 feet of

the Firm's office, contacting anyone at the Firm by any means except through a specified email address, contacting any of the Firm's clients with respect to her dispute with the Firm, representing herself as being a member of the Firm, or attempting to secure a lien on the Firm's property.  That order was updated on two separate occasions to address further episodes of Ms. Wagner's ongoing conduct.

10.     Ms. Wagner then filed three more lawsuits over her departure from the Firm: one against the Firm in the U.S. District Court for the Southern District of New York (*Wagner v. Akin Gump et al.)*, a second against a client ███████████████████████████████, and a third against ███████████████████████████████████████████████ ████████████████████████  Each of the lawsuits makes substantially identical claims to the claims against the Firm in the instant case.

11.     Concerned about Ms. Wagner's capacity, the Firm moved in the instant action for the appointment of a guardian *ad litem*, which the court granted on February 16, 2017.  After receiving the report from the guardian *ad litem* informing that Ms. Wagner would be represented by Attorney Iris Green for further proceedings in the case, the Court ordered the parties to a mediation before Magistrate Judge Alan Kay.  A mediation was held on August 17, 2017, during which Ms. Green and I attempted unsuccessfully to reach a settlement.

12.     Over the course of the next several months, Ms. Green and I continued to negotiate on behalf of our respective clients.  On January 4, 2018, Ms. Green and I reached an agreement on a settlement and signed a term sheet setting forth the terms of the parties' deal ("Term Sheet").  I have attached that Term Sheet as Exhibit 1.

13.     The Term Sheet is straightforward.  It first sets forth a process for the Court to make a finding that Ms. Wagner has the capacity and competence to enter into a settlement.  It then provides the following material terms:

i.     The Firm will pay Ms. Wagner $20,000, following her dismissal of the cases;

ii.    All preliminary injunction orders are incorporated into the settlement agreement, and Ms. Wagner must comply with them in order to receive and retain payment;

iii.   Ms. Wagner releases all her claims against the Firm, its partners and employees, clients, and others;

iv.    Ms. Wagner dismisses all her cases against the Firm, client, and partner;

v.     Ms. Wagner will not seek to become reemployed or reaffiliated with the Firm; and

vi.    The court will retain jurisdiction to settle disputes that arise under the settlement agreement.

14.     The parties agreed to prepare a settlement agreement to more fully embody the terms of the Term Sheet.  Over the course of the next several months, the parties worked to complete such an agreement.

15.     The parties reached a dispute over confidentiality, a term not contained in the Term Sheet.  Ms. Wagner demanded mutual confidentiality of the agreement.  The parties ultimately agreed that the only provision in the settlement agreement addressing confidentiality would be Ms. Wagner's obligation to keep client information confidential in accordance with her ethical duties as a lawyer.  A final version of the settlement agreement was exchanged on October 11, 2018.  I have attached the last version of the settlement agreement as Exhibit 2.

16.     In late October 2018, just before the parties were due to have a status conference with the Court to report on their resolution of the case, Ms. Green advised me that Ms. Wagner

no longer wished to settle.  She claimed that Ms. Wagner had applied for but was rejected from jobs at other firms and claimed that Akin Gump was providing negative references on Ms. Wagner.  Akin Gump's human resources department, however, has no record of ever having received a reference check on Ms. Wagner in recent years.

17.     I asked Ms. Green to provide the basis for Ms. Wagner's allegation that Akin Gump provided a negative reference on Ms. Wagner.  I have no record of ever having received a response to that request.

18.     When I signed the Term Sheet on behalf of the Firm, I fully intended the Firm would be bound by what I had agreed to with Ms. Green.  I also understood that Ms. Green had full authority to bind Ms. Wagner.  Throughout our negotiations, she repeatedly told me that she needed to check with Ms. Wagner before agreeing to particular points.  Before signing the Term Sheet, Ms. Green told me that Ms. Wagner had fully agreed to the terms contained in the document, and authorized Ms. Green to sign the Term Sheet on Ms. Wagner's behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 20, 2019 in Edinburgh, Scotland.

/s Robert G. Lian, Jr.
Robert G. Lian, Jr.