UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KRISTY WAGNER,** | ) | |
| | ) | |
| PLAINTIFF, | ) | Civil Action No.: 1:16-cv-00568 (ES |
| v. | ) | |
| | ) | FILED UNDER SEAL |
| **AKIN GUMP STRAUSS HAUER & FELD, LLP** | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

### PLAINTIFF'S SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE SETTLEMENT

In Defendant's Reply ("Defendant's Reply" or "Def. Rep.") In Support of its Motion To Enforce Settlement ("Defendant's Motion" or "Def. Mot."), Defendant raises new arguments supported by new authorities that were not made in Defendant's initial brief and also attempts to mislead the Court by making false assertions therein. Plaintiff Kristy Wagner, by and through her counsel, GREEN & FOUSHEE and Iris McCollum Green, Esq., hereby responds to Defendant's Reply:

**1.  In Failing to Adequately Refute Assertions in Plaintiff's Opposition, Defendant Concedes Facts Critical to its Motion to Enforce Settlement**

Defendant's Reply defies contract law and reason in asserting the existence of not one but 3 distinct enforceable settlements that bind Plaintiff in the instant litigation[1], which only involves

---

[1] Defendant habitually assumes that all drafts of settlement agreement circulated by Mr. Lian to date constitute "final" agreements and yet fails to explain how 3 enforceable settlements could have resulted in the instant litigation. He also fails to refute that Mr. Lian's (re)distribution of (varying iterations of the same) settlement agreement resulted in rescission of prior settlement proposals made by Defendant in the term sheet and succeeding drafts of settlement agreement. *Pl. Opp. page* 26. Defendant fails to explain, had an enforceable settlement been agreed to on the basis of the term sheet and related correspondences (which Plaintiff categorically denies), why Mr. Lian nonetheless prepared and distributed a draft of settlement agreement at all, no less one that contained a 700% increase in word count (as compared to the term sheet)

one such plaintiff and one defendant.  *See Def. Rep. pages 1-2, 11-12*.  At best, Defendant's Motion to Enforce Settlement and Reply attempt to mislead and distract the Court by mischaracterizing, months and years after the fact, correspondences, conversations and filings of the parties, when contemporaneous evidence wholly contradicts said mischaracterizations.  At worst, Defendant makes knowingly false assertions in a desperate attempt to fraudulently influence the Court to "enforce" a settlement arising out of a term sheet and/or drafts of settlement agreement that Defendant created and crafted to require, *as express conditions precedent to the effectiveness of any such settlement*, the occurrence of a variety of preconditions to settlement (defined by Defendant as "Preconditions to Settlement" in Defendant's term sheet). Defendant also fails to refute that the term sheet and settlement agreement drafts explicitly rendered any prior settlement null and void, in the absence of the occurrence (or waiver) of such Preconditions to Settlement.  Defendant fails to refute that, by operation of the "entire agreement" clause which appears in each and every draft of settlement agreement circulated to date, all prior understandings and agreements of the parties were entirely superseded: "This Agreement, including Exhibits, *set forth the entire agreement and understanding between the Parties and fully supersedes any prior agreements, contracts or understandings (whether written or oral) between Wagner and the Firm*" [emphasis added].

Defendant does not refute that Plaintiff has no present or definitive obligation under the term sheet or any draft of settlement agreement.  As the enforceability of an agreement stems from the definitive character of the obligation to perform, said failure constitutes an admission of the unenforceable nature of any such term sheet or draft.  *See Dyer v. Bilaal,* 983 A.2d 349 at 356 *(D.C. 2009) (citing EastBanc 940 A.2d at 1003)*.

---

and 22 terms not previously discussed by the parties.  If any particular iteration of settlement agreement constituted a second enforceable settlement, as Defendant also asserts, then why did Defendant proceed to circulate yet another varying iteration of the same settlement agreement which Defendant asserts constituted the third such enforceable settlement.

Defendant also failed to adequately refute the fact that, in replacing the term sheet with a document containing 22 terms not previously discussed and 3,488 words (constituting a 700% increase in word count, as compared to the term sheet), which took Defendant longer than 3 weeks to prepare, Defendant was "hardly treating it as a 'mere memorial'" of a previously-agreed settlement.  *See Jack Baker, Inc. v. Office Space Dev., Inc.*, 664 A.2d at 1241.  It is well-settled that while parties may make an enforceable contract binding them to prepare and execute a subsequent agreement, in order to do so, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated into the subsequent agreement.  *D.C. Area Community Council v. Jackson,* 385 A.2d 185 (D.C.1978).  Defendant did not require a 700% increase in word count and 22 previously undiscussed terms to memorialize a prior agreement upon all essential and material settlement terns.  As Defendant failed to adequately refute, the term sheet and settlement agreement drafts failed to incorporate as terms therein all terms of preliminary injunction orders entered against Plaintiff in Washington, DC, which Defendant indicated on multiple occasions were material to its settlement proposal.  Defendant also failed to refute Plaintiff's assertions of the materiality of a non-disclosure (as opposed to confidentiality) obligation binding Defendant.  In so doing, Mr. Lian once again concedes the absence of agreement upon all essential and material settlement terms, as he did in his (again, unilateral) November 1, 2018 "joint status report", which asserted agreement upon "*substantially* all material terms" [emphasis added].  Further, Defendant fails to refute that neither the term sheet nor drafts of settlement agreement defined that which constitutes a breach by each of Plaintiff and Defendant thereunder, or remedies therefor.  Defendant attempts to mislead the Court into believing that confidentiality is immaterial when, contrary to Defendant's assertions, the word "confidentiality" continues to exist in Defendant's last circulated draft of settlement

agreement. *See Ex. 2 to Dec. In Support of Def. Mot*. If it were immaterial, Defendant would have removed all references thereto in response to counsel's multiple demands to do so, especially in light of the fact that Defendant believes Plaintiff to already be bound by such confidentiality obligation as a member of the bar. *See Def. Rep. page 8*. The term sheet and prior drafts of settlement agreement failed to constitute enforceable contracts since no such document incorporated all material and essential settlement terms. *See D.C. Area Community Council v. Jackson,* 385 A.2d 185 (D.C.1978) (If a document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and any such "contract" to make a contract is not a contract at all).

In failing to refute Plaintiff's assertions that the absence of any involvement by or of the Guardian *Ad Litem*, which Defendant moved this Court to appoint, and which Defendant stated it would require an on-record statement from to the effect that settlement is in Plaintiff's best legal interest (as a "Precondition to Settlement"), Defendant concedes that the absence thereof rendered any and all purported settlements invalid, non-binding and unenforceable.

Further, Defendant failed to adequately refute Plaintiff's allegations of undue delay and bad faith as Plaintiff's assertions focused on the fact that Defendant ***delayed for 6 plus months in asserting the existence of an <u>enforceable</u> settlement*** and ***more than 8 months in moving this Court to <u>enforce</u> same***. *See Pl. Opp. pages 15-16*. Defendant's undue and inexplicable delay is affirmative proof that Defendant neither intended nor contemporaneously believed an enforceable settlement to have existed at the time of occurrence of the events and emails Defendant mischaracterizes in its Motion and Reply. Defendant's preparation and filing of a "joint status report" that refers to the existence of "a final settlement agreement" but fails to assert the present or future effectiveness or enforceability thereof (e.g. by the existence of a

4

counterpart signed by Plaintiff and the satisfaction or waiver of all other preconditions to settlement) amounts to little more than an assertion that the parties previously engaged in settlement discussions about drafts of settlement agreement created and distributed by Defendant. Defendant has also failed to explain why, had not one but THREE enforceable settlements existed prior thereto, Defendant would have so cavalierly walked away from and abandoned its rights under such purported settlements by indicating in the November 1, 2018 "joint status report" (which, again, Defendant failed to obtain counsel's revisions or consent to) that whether or not settlement would occur was based solely on whether Plaintiff "wish[es] to settle". Defendant has wholly failed to provide legal justification for why, after abandoning its purported rights under 3 separate enforceable settlements, Defendant can simply return to such abandoned contract rights as if they remained fully intact. Defendant perplexingly attempts to argue that it was Plaintiff who experienced a "change of heart". *See Def. Rep. page 11.* No change of heart was necessary as the term sheet and numerous versions of the settlement agreements by their own explicit terms barred the effectiveness of, superseded and expressly rendered null and void any and all purported settlements.

**2. Defendant's Pattern of Misrepresenting the Parties' Intentions And Communications Should Not Be Tolerated By The Court**

Defendant repeatedly misleads the Court by taking out of context and mischaracterizing words and phrases in counsel's email correspondences and in "joint status report" filings made by Defendant.

    a.  <u>September 22, 2017 and January 4, 2018 Emails</u>

Defendant attempts to convince the Court that in referring to "the revised agreement" and "agreement" (both of which clearly referred to the revised term sheet that Mr. Lian had attached

to his immediately prior email, as no agreement had been drafted or circulated by either party prior thereto) and "a settlement"[2] (which was a cursory response to Mr. Lian's reference to the existence of a "settlement-in-principle" in said immediately prior email), counsel's January 4, 2018 email miraculously transformed the sub-200 word "term sheet" created by Defendant, the majority of which enumerated the "Preconditions to Settlement", into an irrevocable, enforceable settlement notwithstanding the absence of a future "settlement agreement", "agreement" or "contract" referred to in the term sheet and prior to the occurrence of the other express "Preconditions to Settlement" enumerated by Defendant therein. *See Def. Rep. page 3*. Defendant conveniently "leap-frogs" over the fact that even if both parties had agreed to a final settlement agreement containing all material and essential terms and had mutually-signed it, Defendant's own explicit conditions precedent to settlement that Defendant inserted into its drafts of term sheet and settlement agreement would have only caused said agreement to fail to become effective (or enforceable, for that matter). Defendant also fails to address how the Court's "enforcing" a settlement which has yet to and will never become effective by its own terms (and has explicitly been superseded in the entirety by operation of the "entire agreement" clause therein and also independently rendered null and void by its own explicit terms) will

---

[2] Surely Defendant is aware that one or both parties could have referred to the same document as an "agreement", "final" or using any other descriptive without intending or causing said agreement to become valid, binding and enforceable. For this reason, in connection with the closing of corporate transactions, the law firm that created the agreements and contracts (as Defendant did in the instant litigation) is required to issue a detailed, technical legal opinion to the effect that each such agreement and contract is valid, binding and enforceable upon the parties thereto. Defendant, as the party asserting the existence of an enforceable settlement, bears the burden of proof on the issue of contract formation. *See Jack Baker, Inc. v. Office Space Dev., Inc.,* 664 A.2d 1236, 1238 (D.C. 1995). Yet, Defendant has wholly failed to prove the existence of all necessary contractual elements. Defendant has also failed to refute Plaintiff's assertions in its Opposition that authorization, capacity, validity, binding nature and enforceability were lacking with respect to the term sheet and all drafts of settlement agreement, thereby conceding these points. Where the parties contemplate a subsequent written contract, as the term sheet explicitly did, this burden is particularly onerous. *See D.C. Area Community Council v. Jackson,* 385 A.2d 185 (D.C.1978). A document (in this case, the term sheet) that discusses a "final agreement [that] would be drawn up later and signed" is not a binding contract. *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hi z metleri, Ltd Sikerti,* 15 F.Supp.2d at 53; *see also Maloney v. E.I. Du Pont de Nemours & Co.*, 352 F.2d at 938 (citations omitted).

accomplish anything other than continuing and unjustifiable delay.  Defendant also conveniently fails to state that the email to which counsel was responding on January 4, 2018 contained an express statement by Mr. Lian that "...we will work to put the final settlement agreement together in the next few days".  *See Exh. 1 to Pl. Opp*.  The fact that Defendant went on to prepare, over a period in excess of 3 weeks, a voluminous draft of settlement agreement which contained 3,488 words (a 700% increase in word count as compared to the term sheet) and 22 terms not previously discussed by the parties, without once consulting counsel in the preparation thereof, clearly shows the absence of an enforceable settlement prior thereto as well as that Defendant breached its January 4, 2018 promise that "we will work to put the final settlement agreement together in the next few days", upon which counsel relied in executing the term sheet on January 4, 2018.

      b.   June 8, 2018 Emails & "Joint Status Report"

Defendant also attempts to mislead the Court by pointing to a June 8, 2018 "joint status report", prepared and filed by Defendant prior to giving counsel ample opportunity to review or consent to same, in which Defendant falsely asserted both that Defendant had obtained the consent of Plaintiff and that "The parties advise the Court that they have reached a final settlement in the matter".  Mr. Lian had not obtained proper authorization or consent to speak for and on behalf of Plaintiff (who was not copied on and had no knowledge of said June 8, 2018 drafts or of the June 8, 2018 status report deadline for that matter) without explicitly confirming the veracity of the exact draft of said June 8, 2018 "joint status report" with counsel, especially in light of the fact that counsel consistently reserved her client's rights in discussions with Mr. Lian and Mr. Lian had never been alerted that Plaintiff had so much as reviewed his June 8, 2018 drafts (which, to date, she has not).  In referring to said June 8, 2018 "joint status report" in the

7

Reply, Defendant does little more than remind the Court of Defendant's repeated unethical tactics. Defendant also falsely asserts that counsel did not submit a subsequent statement saying it disagreed with Defendant's June 8, 2018 assertion. Yet Mr. Lian contradictorily admits in the Reply that counsel conveyed to Mr. Lian before the pivotal July 16, 2018 status conference (immediately succeeding the June 8, 2018 "joint status report") that Plaintiff remained unwilling to consider a settlement proposal that failed to contain a non-disclosure and confidentiality obligation on the part of Defendant, as well as that several other material terms and revisions had yet to be incorporated into any draft of settlement agreement, in response to which Mr. Lian stated "then we have no deal". *See Ex. 1 & 2 to Pl. Opp.* During that same July 16, 2018 status conference, at which Mr. Lian was present, the parties stated that agreement had not been reached on all settlement terms or on a form of settlement agreement. As a result, when the Court asked counsel to submit a draft of the settlement agreement, counsel indicated it did not desire to do so because there was no document that both parties had agreed to. Mr. Lian did not contradict or attempt to "correct" counsel during said July 16, 2018 status conference and the conference was adjourned without the term sheet or any other document being presented to the Court.

Defendant's attempts to mislead the Court are also evident from a string of email correspondences between Mr. Lian and counsel on June 8, 2018, which Defendant attached as Exhibits D and E to its Reply. On June 8, 2018, at 4:20 PM EST, Mr. Lian sent an email to counsel attaching a further "revised agreement". *Exhibit D to Def. Rep.* Counsel responded to Mr. Lian's 4:20 PM email and "revised agreement" (as referred to by Mr. Lian) by stating: "I was working on a brief that I've been working on all week when you called so I did not think through or read through the revised document". *Id.* Counsel proceeds to provide one non-

substantive clean-up edit in said email, which Mr. Lian purportedly incorporated and attached to his 4:54 PM email response thereto, in which he stated: "Iris – Please see attached and let me know if this is what you have in mind. Thanks, Bob". *Id.* Notably, a review of the "redline" attached to Mr. Lian's 4:54 PM draft only shows the one non-substantive clean-up revision proposed by counsel in its immediately prior email (pursuant to which counsel stated it had not yet reviewed or thought through Mr. Lian's draft from earlier that day). *Id.* Contrary to his nearly one-year late assertions made in Defendant's Reply, in attaching a "redline" that only showed the one non-substantive/clean-up edit (the only edit referred to in counsel's immediately preceding email) and in asking "if this is what you have in mind", Mr. Lian was only asking whether the incremental clean-up revision had been properly made by Defendant. *Id.* If he intended to obtain counsel's sign-off on the entirety of the draft of settlement agreement, notwithstanding counsel's prior statement that it was inundated and had yet to review or think through Mr. Lian's prior draft, which counsel previously (orally) reserved its client's rights with respect to, *Mr. Lian would and should have attached a redline showing all cumulative changes made by him on that day or also attached (or at least referred to) the redline which counsel indicated less than 1 hour prior that it had not yet reviewed or thought through.* Just like the other enforceable settlements Defendant claims to exist, counsel's June 8, 2018 5:33 PM email stating "Bob, that's fine with me" (*Exhibit E to Def. Rep.*) could have only consented to Defendant's making of the clean-up revision indicated in said attached "redline". *Exhibit D to Def. Rep.*

### 3. Defendant Fails to Apply Case Law to the Facts At Hand

Defendant also attempts to confuse the Court by referring to countless cases which are for various reasons inapplicable to the facts of the case at hand.

For example, in its Reply, Defendant refers to *Hall v. George Washington Univ.*, No. CIV.A. 99-1136, 2005 WL 1378761 (D.D.C. May 13, 2005), when the mere existence of Preconditions to Settlement (the failure of which to occur explicitly bars the effectiveness of any such settlement), along with the prior appointment of the Guardian *Ad Litem* (and the Court's failure to consider whether or not to dismiss said Guardian *Ad Litem*), render inapplicable all references thereto. Further, Defendant wholly fails to submit evidence to the Court that Plaintiff, herself, signed, agreed to or even reviewed any draft of settlement agreement and not one correspondence submitted to date in support of Defendant's Motion or Reply is probative of this critical fact.

In its Reply, Defendant also refers to *Dyer v. Bilaal*, which involved multiple plaintiffs who separately agreed to settle their claims when (1) one settlement agreement was reached on May 28, 2007, between Mr. Dyer and the estate of Mr. King, as was evidenced by plaintiffs' counsel's (unopposed) reading into the court record on the date set for trial the material terms of said agreement; and (2) the remaining parties executed a settlement agreement and release on August 23, 2007. *Dyer,* 983 A.2d at 353. In the instant litigation, no "material terms" have been read into the record in Court nor has an agreement or document been presented to the Court as representative of any settlement. *Pl. Opp. page 8*. The *Dyer* settlement made plaintiff's estate whole (by returning the house that was subject to the allegedly fraudulent mortgage) and provided considerable additional compensation by paying off the mortgage thereon and making a substantial cash payment. *Dyer,* 983 A.2d at 356. No settlement proposal made by Defendant to date has offered more than a *de minimis* payment, nor has it otherwise made Plaintiff whole in the wake of the loss of her successful and valuable legal career, caused by Defendant's unlawful actions and inactions. As stated in Plaintiff's Opposition, Defendant was made aware by counsel

that it does not believe any settlement proposal to date to be fair or to adequately protect or compensate its client.  In *Dyer*, there was no evidence of long-standing mental illness of any party nor had a Guardian *Ad Litem* been appointed upon the request of the party seeking to enforce the settlement.  Unlike Defendant, who has yet to so much as propose to Plaintiff 2-3 potential psychiatric examiners, defendants in *Dyer* took punctual efforts to satisfy their obligations under the settlement agreement.  *See Dyer,* 983 A.2d at 353.

## Conclusion

Defendant's Reply fails to adequately refute, thereby conceding, facts critical to Defendant's Motion to Enforce Settlement.  Further, none of Defendant's new assertions or authorities were adequately or correctly applied to the facts at hand as would be necessary to prove the existence of an enforceable settlement – no less 3 distinct enforceable settlements.  None of the case law Defendant cites in its Motion or in its Reply pertains to enforcement of a settlement in the absence of a mutually-signed settlement agreement (one of several express conditions precedent to settlement) and of agreement upon all material and essential settlement terms, concerning a Plaintiff whose counsel has advised against so signing and for whom a Guardian *Ad Litem* has been appointed but not yet consulted on the matter of settlement.  Hence, the Court must deny Defendant's Motion to Enforce Settlement.

                Respectfully submitted,

                GREEN & FOUSHEE

                By:

                /s/ Iris McCollum Green
                IRIS McCOLLUM GREEN, ESQ.
                D. C. Bar No. 932590
                1730 M Street, N. W., Suite 609
                Washington, D. C. 20036
                (202) 785-1171
                iriseagain@aol.com